MAY TERM, 1881, No. 136.    JUNE 21ST, 1881.

# Billings *et al. versus* Billings.

1. B. and C. entered into an agreement which provided that C. should cut, peel, transport, and deliver into the Susquehanna boom at Williamsport, within four years, all the merchantable pine timber then growing upon certain lands of B., for which C. should receive four dollars per thousand feet, payable "in good merchantable pine saw-logs, equal in value to the timber cut upon said lands at the price or sum of eight dollars per thousand feet, to be delivered in said boom," and which further provided that B. "will not sell or dispose of said timber, or any part thereof, to any other person at any price without giving the said second party (C.) the refusal to purchase the same upon the same terms as he, the said first party (B.), shall sell the same." *Held,* reversing the Court below, that upon the death of B., before any actual severance of the timber, it continued to be a constituent part of the real estate, and that his widow, as ad-

[Billings *et al. v.* Billings.]

ministratrix, was not entitled to the proceeds of the sale of timber severed after his death.

2. Under the terms of the contract B. was not bound to sell the timber at all, and it therefore does not work a constructive severance.

ERROR to the Court of Common Pleas of *Tioga County*.

Amicable action of assumpsit by C. F. Billings, P. S. S. McNeil and Abby B. McNeil, in right of the said Abby B. McNeil against Sarah M. Billings, entered October 26th, 1880, with same effect as if a summons had been issued and returned served. The parties waived the right of trial by jury and submitted the decision of the issue joined to the Court.

The facts were agreed upon, as follows:

Upon the 25th of September, 1879, Silas X. Billings of the one part, and Henry Colton of the other part, entered into an agreement which provided, that whereas Billings was the owner of certain lots of land, " the said party of the second part hereby agrees, in consideration of the covenants and agreements of the said party of the first part, to cut, peel, transport, and deliver into the Susquehanna boom at Williamsport, Pennsylvania, in a proper and workmanlike manner, according to the custom of lumbermen, all the merchantable pine timber upon said lots of land within four years from the date hereof, at the price or sum of four dollars per thousand feet, excepting, however, from said timber, so much thereof as the said party of the first part shall cut for the Cedar Run Tanning Company, and the said party of the first part hereby agrees to pay to said second party for cutting, peeling, transporting, and delivering said timber into said boom, the full amount of the aforesaid price in good merchantable pine sawlogs, equal in value to the timber to be cut upon the aforesaid lands at the price or sum of eight dollars per thousand feet, to be delivered in said boom; the said second party hereby agrees that from this date, annually, he will cut and deliver as aforesaid, about one-fourth of all the said timber, all of which shall be marked with the mark of said first party, to wit, ' S. X. B.,' and the said first party hereby agrees to pay said second party for said cutting, peeling, and delivering of said timber each year, as fast as the same is delivered and the amount is ascertained, by orders upon the company owning or operating said boom. In the cutting and transportation of said timber, no hemlock timber upon said lands shall be destroyed. All of said timber, as fast as the same is cut, and before the same is put into water for transportation, shall be scaled by scalers chosen and agreed upon by the parties aforesaid, and whose services shall be paid for by said parties jointly, and said second party shall have a free right of way over and upon any adjoining lands of said first party,

[Billings *et al. v.* Billings.]

for the purpose of cutting, storing, and removing said timber, and said party of the first part hereby agrees that he will not sell or dispose of said timber, or any part thereof, to any other person at any price without first giving to said second party the refusal to purchase the same upon the same terms as he, the said first party, shall sell the same. And all charges for boomage upon said timber shall be paid by the person or party to whom said boom company shall deliver the same, and the said party of the second part hereby covenants and agrees that he will not sell, assign, or transfer any interest in this agreement to any other person without the written consent of said first party."

Silas X. Billings died October 13th, 1879, intestate, without issue, leaving to survive him a widow, Sarah M. Billings, the defendant, and one brother and one sister of the whole blood, Charles F. Billings and Abby B. McNeil, wife of Peter S. S. McNeil, the plaintiffs, and one brother and three sisters of the half blood.

The defendant took out letters of administration October 27th, 1879. Since the death of the decedent, Colton cut and removed 3,095,000 feet of the timber mentioned in the above agreement, one-half of which the defendant delivered to him. She also sold to him the other undivided half, for which she received six thousand six hundred dollars.

Upon this state of facts the plaintiffs claimed that the timber was real estate, which descended to the heirs of the decedent.

The Court below, H. W. WILLIAMS, P. J., found, *inter alia*, as follows:

"The remaining question is that which grows out of the contract with Henry Colton. Its provisions are peculiar and require a careful examination. On the part of Colton it is an agreement to cut, remove, and deliver in the boom at Williamsport all the pine timber on five warrants of unseated land, containing five thousand acres, within four years from the date of the contract, and not to sell or transfer his interest therein to any one without the consent of Billings. The consideration for performance on his part is stated to be 'the covenants and agreements of said first party,' and these are as follows: To pay four dollars per M ft. for cutting, removing, and delivering the timber in the boom, to pay this amount in pine saw-logs, equal in value to the timber to be cut under the contract at eight dollars per M ft. in the boom at Williamsport; to deliver the logs by the delivery to Colton of orders on the company operating the boom and having them in custody, and to give Colton the refusal of all the logs got in by him at the price at which Billings might be

willing to sell them in the boom. Under this agreement Colton entered on the land, and after the death of Billings, cut, removed, and delivered in the boom at Williamsport, a large quantity of saw-logs. For this labor he received four dollars per M ft. in saw-logs of equal value, etc., at eight dollars per M ft., and the refusal of the logs remaining in the boom. He exercised his option and became a purchaser of all the logs at the price put upon them by the personal repre-enta-tive of Billings. The money paid by him for the timber so bought is in the hands of the defendant as administratrix. The heirs seek to recover it from her, alleging that the timber was, at the death of Billings, standing on, and, therefore, part of the freehold; and that the defendant has no more right to its proceeds than she would have if the contract had never been made.

"On the other hand it is urged that the contract is in effect an agreement to put in the timber for one-half of it, and is, therefore, an absolute sale of one-half to Colton, as the consideration for putting the whole into the boom.

"This may have been in the minds of the parties, but we are unable to see that it is expressed in the contract. In its terms it seems to us to be a contract for the performance of certain labor by Colton, and for payment therefor by Billings. The price of four dollars per M ft. is to be paid, it is true, in saw-logs, but not necessarily those gotten in by Colton. The contract declares that they shall be 'equal in value,' but it does not declare that they shall be the same logs; under this provision no title vests in Colton to any particular logs, nor has he a right to insist that he shall be paid in logs, and that the logs so paid to him shall be 'equal in value' to those he has already cut and delivered in the boom. If payment is not made in accordance with the contract his remedy is an action on the contract for damages. If payment is made or tendered in logs 'equal in value' to those got in by him, it is no matter on what land they grow, or by whom they were cut and delivered in the boom. We cannot regard this position, therefore, as well taken.

"But the contract contains the following clause, to which reference has already been made, viz.: 'Said first party agrees that he will not sell or dispose of said timber, or any part thereof, to any person, at any price, without first giving to said second party the refusal to purchase the same upon the same terms as he, said first party, shall sell the same.'

"This clause gives Colton the unqualified refusal of the whole quantity of timber to be cut and delivered in the boom by him. Billings divests himself of the power to sell to any one else until he shall have first offered it at his selling price

to Colton. This is a sale at the option of Colton, and that option is part of the price agreed upon for his labor. In other words, we have in this contract an agreement by Colton, to perform certain labor for a certain price, *plus* the refusal under consideration. So far as Billings is concerned nothing remains to be done except to fix the price at which he will sell, and when this is done Colton may insist on his right to take, as a purchaser, without the slightest regard to the wishes of Billings. So far as Billings is concerned, then, this is a contract of sale at a price to be fixed in the future when the logs may be delivered in the boom. Now a contract of sale of standing timber made with a view to its immediate removal works its conversion into personalty, as in the case of the contract with J. M. & Michael Wolf, just considered. The effect of a sale resting on the option of the purchaser is the same: 1 Sugden on Vendors, 187.

" It may be said that this is not a sale of standing timber upon any terms but upon logs only, and that there is, therefore, no room for the application of the rule referred to ; but the contract must be construed as a whole. Taken altogether, it is an agreement by Billings to cut and deliver in the boom at Williamsport all the pine timber on certain lands, and to give to Colton the refusal of the same.

" Timber from any other lands of Billings, though ' equal in value,' will not answer the requirements of the contract The timber must be from the lands described, and Colton has a right to the whole of it,—all that was standing, when the contract was made, suitable for cutting. Now this may not be a sale of standing timber, and it may be that losses by fire and flood occurring prior to the actual delivery of the logs to the purchaser would fall upon Billings ; but it is at least a selection and designation by the owner of a particular lot of standing timber for cutting and removal from the land, an agreement for its immediate. cutting and removal, and an agreement with a purchaser for a sale at his option of the timber when removed. The jobber and the purchaser are the same person. Colton agrees to cut and deliver in the boom the timber from the designated lands, and when delivered he has the refusal of the logs. They are never under Billings's control for purposes of sale at any time, unless Colton declines to take them, but from the date of the contract the right of Colton as a purchaser is fixed. Whether such a contract passes any title to the standing timber or not, we think it is such a contract as works a constructive severance of the timber affected by it, and, therefore, a conversion of it into personalty.

" We are not called upon to express an opinion not neces-

sary to the disposition of this case, but if the clause giving the refusal of the timber to Colton had not been in the contract we should then have had an entirely different question. The rights of the parties would then have depended upon the effect of the contract to cut and remove the timber at a fixed price for the labor. Whether such a contract under which nothing had been done prior to the death of the owner of the freehold would work a conversion is, so far as we know, yet to be decided. Its decision is not necessary to the determination of this cause, and we express no opinion upon it.

The question we have upon this contract is whether its stipulations taken together work a constructive severance of the timber, which was cut and delivered under it, taken by Colton as a purchaser, and paid for by him to the defendant. Upon that question we feel very confident in the opinion we have expressed. We think the contract is binding and capable of enforcement in accordance with its provisions by and against the personal representatives; and that, as to both parties to it and as to the plaintiffs in this case, it worked a constructive severance of the timber at its execution without any regard to the question whether title vested in Colton at that date, or at the time his option was exercised."

Judgment for the defendant, whereupon this finding was assigned as error.

*W. H. Armstrong* and *C. H. Seymour* for plaintiffs in error.

In holding that the clause in the agreement about not selling the timber without giving Colton the refusal of it was a sale at the option of Colton, and gave him the unqualified refusal of the whole quantity of timber to be cut and delivered, the Court took a wrong view. There is nothing in that clause which required Billings to sell. He could saw the logs at his own mill. It gave Colton no present nor even a contingent interest in the timber. Such a contract cannot be specifically enforced: Elder *v.* Robinson, 19 Pennsylvania State, 364. There was no sale, since there was neither price, time, or place in contemplation: Nesbit *v.* Burry, 1 Casey, 208; Hutchinson *v.* Hunter, 7 Barr, 145.

The contract was personal only and died with the parties: Lovering *v.* Buck M. C. Co., 54 Pennsylvania State, 291; Dickinson *v.* Calahan's Admr., 7 Harris, 227; Bland's Admr., *v.* Umstead, 11 Harris, 316; 1 Story on Contracts, § 275–287.

If the administratrix was bound at all, she would be bound for four years, and the estate must be kept open for all that time.

*H. Sherwood, J. Harrison* and *Elliott & Watrous* for defendant in error.

The contract when carefully examined shows that Billings intended to sell and Colton to purchase one-half of the pine timber on the tracts. If there was such a sale it clearly worked a conversion of the timber from realty to personalty: McClintock's Appeal, 21 P. F. Smith, 365 ; Sugden on Vendors, vol. i, p. 287 ; 1 Williams on Executors, 627.

Even if an executory contract it could be enforced: Parsons on Contracts, 130 ; 2 Williams on Executors, 1560 ; White's Executors *v.* The Commonwealth, 3 Wr., 175 ; Wentworth *v.* Cock, 10 Adolphus & Ellis, 33.

If the contract is enforceable it operates as between the heirs and personal representatives to convert the standing timber into personalty.

The opinion of the Court was delivered October 3d, 1881, by STERRETT, J.

The contract of September 26th, 1879, between Billings, the husband of defendant, and Colton, by which the latter agreed " to cut, peel, transport, and deliver into the Susquehanna boom at Williamsport," within four years, all the merchantable pine timber then growing upon certain lands of the former, contains some peculiar provisions; but, aside from the clause hereinafter quoted, it is substantially an agreement, on the part of Colton, to do all the work of cutting and delivering the timber, for which he was to receive from Billings four dollars per thousand feet, payable not in money but "in good, merchantable pine saw logs, equal in value to the timber cut upon said lands, at the price or sum of eight dollars per thousand feet, to be delivered in the boom " After specifying the services to be rendered by Colton and the manner in which he was to be compensated therefor, Billings agrees, in the clause referred to, "'that he will not sell or dispose of said timber or any part thereof to any other person at any price, without giving the said second party the refusal to purchase the same upon the same terms as he, the said first party, shall sell the same." This is the clause, in the contract above referred to, upon the effect of which the present contention hinges. The several assignments of error relate either directly or indirectly to the construction given to it by the Court below.

During the lifetime of Mr. Billings there was no actual severance of any part of the timber in question; but defendant contends that by the terms of the contract it was constructively severed from her husband's real estate, and thus became a species of personal property, which, after his

decease, she, as his personal representative, had a right to administer, and that as his widow she is entitled under the intestate law to one-half of the net proceeds thereof. She accordingly settled with Colton for the work done under the contract, and sold him timber in the boom to the amount of six thousand six hundred dollars and received the money. If the proper construction and legitimate effect of the contract is as she contends the judgment should be sustained. On the other hand, if there was no severance, actual or constructive, during the lifetime of the intestate, it follows that the timber, at the time of his decease, continued to be a constituent part of his real estate, the title to which vested in his heirs-at-law, subject to such incumbrances and charges as may have existed against the same.

In construing the contract the learned president of the Common Pleas substantially held that the clause in question gave Colton an unqualified refusal of all the timber he agreed to cut and deliver in the boom; that this was in effect a sale at the option of Colton for a price to be fixed in the future, and that the case was brought within the recognized principle that a sale of standing timber, made with a view to its immediate removal, works a conversion of it into personalty. In thus construing the contract, and especially in holding that it gave Colton the unqualified refusal of the timber cut and delivered in the boom, we think there was error. While Billings bound himself not to sell or dispose of the timber, cut and delivered under the contract, to any other person without first giving Colton the refusal to purchase upon the same terms, it is very clear he was not bound to sell either to Colton or any one else. He was entitled to the possession of it in the boom, and might hold it for an indefinite period; or, if he chose, he might manufacture it into any kind of lumber for which it was suitable, and either use or dispose of the product as he saw fit. So far as any provision of the contract is concerned no one could question his right to do so. It was only in case he determined to sell the logs that he was required to give Colton the refusal to purchase them. We see nothing in the contract that can fairly be construed into a sale of the standing timber. On the contrary the agreement is so framed as to preclude Colton from successfully asserting any title to or interest in the timber either before or after it was cut, unless Billings determined to sell or dispose of it, and then he was only bound to first tender it to Colton on such terms as he was willing to make with any other person. The title and possession were exclusively in him. While he was bound to pay Colton "in good, merchantable pine saw-logs," for the

[Weaver *v.* Frantz.]

labor of cutting and transporting the timber to the boom, he was not required to use for that purpose any of the logs cut by Colton. He had a right to pay him in any other logs, provided only they were "equal in value" and good, merchantable pine saw-logs.

From what has been said it follows that the judgment should be reversed; and, as to the only item of the plaintiff's claim, viz, $6600; to which the assignment of error relates, judgment should be entered in favor of the plaintiffs. As to the other items of their claim, as set forth in the declaration, the plaintiffs have acquiesced in the judgment of the Court below.

> The judgment of the Court of. Common Pleas is reversed, and judgment is now entered in favor of the plaintiffs and against the defendant for six thousand six hundred dollars ($6600), with interest from November 20th, 1880.